IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT BROWN, an Individual, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   No. CIV-21-353-R ) |
| BLACKSTONE CONSULTING, INC., a Foreign Corporation, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Blackstone Consulting Inc.'s ("Blackstone") motion to dismiss, Doc. No. 13. Plaintiff Robert Brown ("Brown") responded in opposition, Doc. No. 15, and Blackstone filed a reply in Doc. No. 16.

In evaluating a motion to dismiss, the Court assumes the truth of a plaintiff's well-pled factual allegations and evaluates them in the light most favorable to the non-movant. *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009). Brown alleges the following.

Under the Randolph Sheppard Act, 20 U.S.C. § 107, the United States Government prioritizes blind persons when evaluating bids for the provision of food services on federal property. The state licensing agency initially chose Mr. A.B. Swanson ("Swanson") to serve as the blind licensed manager on the Fort Sill Contract—the food service contract awarded to the State of Oklahoma at the Fort Sill Army Base. Doc. No. 1-2 ¶ 2. Swanson

then selected Cantu Services, Inc. ("Cantu") to serve as his teaming partner under a Manager Support Agreement ("MSA"). *Id.* ¶ 3.

"In settlement of a certain dispute between [the agency] and Swanson, Swanson agreed to retire as the licensed manager on the Fort Sill Contract." *Id.* ¶ 4. The agency replaced Swanson with the Plaintiff, Robert Brown. *Id.* ¶ 5. After the agency selected Brown, he entered into a Vendor Support Agreement ("VSA") with Blackstone, "whereby [Blackstone] would serve as the teaming partner on the Fort Sill Contract." *Id.*

In response to Blackstone and Brown agreeing to serve as partners, Cantu filed suit in state court—in Comanche County—against the agency "on the ground that Brown had stepped into Swanson's shoes and was subject to the MSA between Swanson and Cantu." *Id.* ¶¶ 6–7 (citing *Cantu Services, Inc. v. ODRS*, CJ-2011-440). Cantu prevailed "by way of an order entered by the Hon. Keith Aycock" finding that "Cantu, and not BCI, had retained all rights and responsibilities to continue as the teaming partner for the blind vendor/manager." *Id.* ¶ 8.

Despite Judge Aycock's Order, Brown alleges that Blackstone, "by and through the attorney it hired to represent both Brown and [Blackstone,]" advised both parties to ignore the court's order and to proceed as partners on the Fort Sill Contract. *Id.* ¶ 9. Brown relied on the advice, terminating Cantu and replacing it with Blackstone. Thereafter, Cantu initiated arbitration proceedings against Brown, seeking "revenues it alleged it lost after having been deprived of the opportunity to continue as the teaming partner." *Id.* ¶ 10. Cantu prevailed and received an arbitration award of approximately $5 million against Brown because the panel found Cantu would have received that amount had it served as Brown's

teaming partner instead of Blackstone. *Id.* ¶¶ 10–11. The award was confirmed on January 14, 2020. *Id.* ¶ 12. Pursuant to the VSA's indemnification clause, Brown "made demand on [Blackstone] to indemnify [him] … from liability associated with the Arbitration Award." *Id.* ¶ 13. After receiving the demand, Blackstone refused to indemnify Brown. *Id.*

Attempting to recover an amount equal to the $5 million arbitration award against him, Brown filed this suit against Blackstone for Breach of Contract, Tortious Breach of Contract, Negligence, and Gross Negligence. *Id.* ¶¶ 13, 18–22. Blackstone, asserting that the indemnification provision does not apply, filed this motion to dismiss. Doc. No. 13.

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must determine whether a plaintiff has stated a claim upon which relief may be granted. The motion is properly granted when the Complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain enough "facts to state a claim to relief that is plausible on its face," *id.* at 570, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted). The Court must accept all the well-pled allegations of the Complaint as true and must construe the allegations in the light most favorable to the plaintiff. *Id.*; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991). The Court now addresses each of Blackstone's arguments in turn.

1. **Whether the Plain Language of the Indemnity Provision Bars Brown's Contract Claim.**

Blackstone argues that "under the plain language of the indemnity provision, [Blackstone] is not required to indemnify the Plaintiff." Doc. No. 13, p. 3. Brown responds that "[t]he broad indemnification language to which BCI agreed" specifically "requires BCI to indemnify Brown." Doc. No. 15, p. 6.

When interpreting contracts in Oklahoma, courts shall not "force[ ] or constrain[ ] interpretations to create … [or] construe ambiguities." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). Additionally, courts "will not undertake to rewrite … nor to make … either party a better contract than the one … executed." *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (citing *Max True Plastering*, 912 P.2d at 869 (Okla. 1996)). Likewise, courts "follow the rules applicable generally to contracts, and [ ] must attempt to ascertain the intention of the parties, based upon the whole contract[ ]" when interpreting indemnity provisions. *Wallace v. Sherwood Const. Co.*, 877 P.2d 632, 634 (Okla. Ct. Civ. App. 1994) (citing *Luke v. American Surety Co. of New York,* 114 P.2d 950 (Okla. 1941)).

The indemnity provision in the VSA states that

> [Blackstone] agrees to indemnify, defend, and save harmless the Department, its officers, agents, employees, and [Brown] from any claims or liability arising out of any act or omission of [Blackstone], its agents, employees or subcontractors under any provision of this agreement. [Blackstone] shall have no indemnity obligation with respect to disputes between or claims by the Department against [Brown] or by [Brown] against the Department.

4

Doc. No. 14 ¶ 10.

By the express language of the VSA, Blackstone agreed to indemnify Brown from losses deriving from "any act or omission of [Blackstone] … *under any provision of [the] agreement*." Doc. No. 14 ¶ 10 (emphasis added). Brown alleged that Blackstone's conduct caused his loss because Blackstone "disregard[ed] the Aycock Order" and continued to "go forward" as Brown's teaming partner. Doc. 1-2 ¶ 9. However, Brown does not allege—neither in the Petition, nor in the response—which provision of the agreement Blackstone violated. Doc. No. 13, p. 4. When responding to the motion to dismiss his *negligence* claim, Brown argues that several provisions of the agreement created duties that Blackstone owed him. Doc. No. 15, p. 7. However, regarding his *breach of contract* claim, he does not explain how Blackstone's conduct—convincing Brown to terminate Cantu and operate the Fort Sill Contract with Blackstone—is an "act or omission … under any provision" of the VSA.

Because Brown has not identified a provision encompassing Blackstone's conduct, and therefore triggering its indemnity obligation, he has failed to state a claim for breach of contract under Fed. R. Civ. P. 12(b)(6). Accordingly, Brown's breach of contract claim is dismissed.

2. **Whether Brown's Negligence and Gross Negligence Claims Fail as a Matter of Law**

Next, Blackstone argues that Brown's negligence claims fail because "the only duty [Blackstone] owed to Brown" was contractual, and thus, Brown's only available remedy lies in a claim for breach of contract. Doc. No. 13, p. 5. In response, Brown lists several

contractual duties Blackstone owed him and explains that "a plaintiff may advance alternative theories of relief" in pursuing his claims. Doc. No. 15, pp. 7-8.

To plead a claim for negligence, Brown must show Blackstone owed him a duty, breached that duty, and that he suffered an injury as a proximate result. *See Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1167 (Okla. 2009). In Oklahoma, "an action for breach of contract and an action in tort may arise from the same set of facts." *Finnell v. Seismic*, 67 P.3d 339, 344 (Okla. 2003). In *Embry v. Innovative Aftermarket Sys.*, 247 P.3d 1158, 1161 (Okla. 2010), the Oklahoma Supreme Court recognized that the confines of a contract do not create a duty of reasonable care when it explained that "[t]here is simply no general duty to use reasonable care in the performance of a contract." Because "a mere matter of contract cannot be converted into a tort," Brown must show Blackstone owed it a duty lying outside of the VSA, and that Blackstone breached that duty proximately causing his injury. *Oklahoma Nat. Gas Co. v. Pack*, 97 P.2d 768, 770 (Okla. 1939). Thus, the Court need not address Brown's assertion of contractual duties taken from the VSA, and the Court turns to his allegations lying outside of the agreement.

Brown argues that Blackstone owed him "duties created by the nature of the Randolph-Sheppard Act and the administrative process associated with the selection" of Brown and his management partner, Blackstone. Doc. No. 15, p. 7. The "Randolph-Sheppard Act was enacted to benefit blind persons by providing them with greater employment and economic opportunities." *Texas Workforce Comm'n v. United States Dep't of Educ.*, 973 F.3d 383, 387 (5th Cir. 2020). The Act established a duty for a state licensing agency to give preference to blind persons when selecting food service providers.

6

20 U.S.C. § 107(b). The text of the Act does not, however, create a tort duty on behalf of the management partner—Blackstone—working alongside the blind food service provider. Further, the Court does not see, nor has Brown explained, how the administrative process created a tort duty that Blackstone owed Brown.

Brown correctly explains that he may advance alternative theories of relief at this stage. Doc. No. 15, p. 8. However, Brown's asserted claims for relief must be "plausible." *Twombly*, 550 U.S. at 570. Here, Brown claims that Blackstone "advised [him]" to disregard a court order and continue as partners on the Fort Sill Contract. Doc. No. 1-2 ¶ 9. He alleges that Blackstone's conduct led to a successful arbitration award against him, and that thereafter, Blackstone has not indemnified him for his loss. Blackstone's alleged breach clearly lies from the contractual duties between the parties, and therefore, Brown has failed to state that Blackstone owed him a duty outside the scope of the parties' agreement. Because he has not shown that Blackstone owed him a duty, Brown has not stated a plausible *negligence* claim. Accordingly, Brown's negligence-based claims are dismissed.

   **3. Whether Brown's Tortious Breach of Contract Claim Fails Due to a Lack of a Special Relationship.**

Lastly, Blackstone argues that Brown's claim for tortious breach of contract should be dismissed because his allegations are "simply proof of [the] breach of the implied duty to deal fairly and in good faith, and not an independent theory of recovery." Doc. No. 13, p. 7 (internal citations omitted). Brown did not respond to Blackstone's argument. For this reason, Brown's claim for tortious breach of contract is deemed confessed. *See, e.g.*,

*Choctaw Town Square, LLC v. Kokh Licensee, LLC*, No. CIV-13-1246-F, 2016 WL 4430000, at *4 (W.D. Okla. Mar. 16, 2016) (motion deemed confessed when plaintiff failed to respond).

### 4. Conclusion

In summary, Blackstone's motion to dismiss, Doc. No. 13, is hereby GRANTED. Brown's breach of contract, tortious breach of contract, and negligence-based claims are hereby DISMISSED.

Nonetheless, finding that granting leave to amend would not prejudice Blackstone, the Court hereby grants Brown's request for leave to amend his Petition. *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.") (internal citations omitted).

**IT IS SO ORDERED** on this 17th day of August 2021.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE