IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBERT BROWN, an individual,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. CIV-21-353-R |
| | ) |
| **BLACKSTONE CONSULTING, INC.,** | ) |
| a foreign corporation, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Before the Court is Defendant Blackstone Consulting Inc.'s (Blackstone) motion to dismiss [Doc. No. 21] Plaintiff Robert Brown's (Mr. Brown) Amended Complaint. Mr. Brown responded in opposition [Doc. No. 27], and Blackstone filed a reply in support of its motion to dismiss. Doc. No. 28. Upon consideration of the parties' submissions, the Court finds as follows.

The parties' dispute stems from a Vendor Support Agreement (VSA) executed between Plaintiff Mr. Brown, a blind vendor, and Blackstone, his chosen teaming partner. Under the Randolph Sheppard Act, 20 U.S.C. § 107, the United States Government prioritizes blind persons when evaluating bids for the provision of food services on federal property. The Oklahoma Department of Rehabilitation Services (DRS), the agency responsible for choosing blind vendors, chose Mr. Brown to replace Mr. A.B. Swanson (Swanson) as the blind licensed manager for the contract at Fort Sill. Doc. No. 18 ¶ 2. At the time Plaintiff assumed the contract, Cantu Services, Inc. (Cantu) served as Swanson's teaming partner under a manager support agreement (MSA). *Id*. ¶ 3.  After the agency

selected Mr. Brown, he entered into a vendor support agreement (VSA) with Blackstone, "whereby [Blackstone] would serve as the teaming partner on the Fort Sill Contract." *Id*. ¶ 5.

Cantu, fearing it would be replaced as the teaming partner on the Fort Sill contract, filed suit in Comanche County against the DRS on the theory that Mr. Brown had stepped into Mr. Swanson's shoes and therefore was bound to the MSA between Swanson and Cantu. *Id*. ¶¶ 6–7 (citing *Cantu Services, Inc. v. ODRS*, CJ-2011-440). Cantu prevailed, with the Hon. Keith Aycock finding that Cantu, and not Blackstone, had retained all rights and responsibilities to continue as the teaming partner for the blind vendor/manager. *Id*. ¶ 8.

Plaintiff alleges that after Judge Aycock's order Blackstone "by and through" the attorney it retained to jointly represent Mr. Brown and itself, advised Mr. Brown to ignore the court's order and to proceed with Blackstone as his teaming partner on the Fort Sill contract. *Id*. ¶ 9. Mr. Brown alleges he relied on the advice and terminated Cantu's service and replaced it with Blackstone's. Thereafter, Cantu initiated arbitration proceedings against Plaintiff, seeking revenues it lost because Mr. Brown deprived Cantu of the opportunity to continue as his teaming partner. *Id*. ¶ 10. Cantu prevailed; the arbitrator granted an award of approximately five million dollars against Mr. Brown. *Id*. ¶¶ 10–11. The award was confirmed on January 14, 2020. *Id*. ¶ 12. Mr. Brown demanded Blackstone indemnify him from liability associated with the arbitration award, pursuant to the VSA's indemnification clause, paragraph 10. *Id*. ¶ 13. Blackstone refused, resulting in the initiation of this lawsuit. *Id*.

Brown alleges Blackstone breached the VSA and that this breach was in violation of the covenant of good faith and fair dealing. *Id.* ¶¶ 13, 18. The Court dismissed the original complaint but granted Mr. Brown leave to amend. Doc. No. 17. Plaintiff filed his Amended Complaint [Doc. No. 18] and Blackstone now moves to dismiss the Amended Complaint with prejudice.

In considering a motion to dismiss under Rule 12(b)(6), the Court must determine whether a plaintiff has stated a claim upon which relief may be granted. The motion is properly granted when the complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain enough "facts to state a claim to relief that is plausible on its face," *id.* at 570, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted). The Court must accept all the well-pled allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff. *Id.*; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

Blackstone argues that under the plain language of the indemnity provision, it is not required to indemnify the Plaintiff for his losses stemming from the arbitration award. Doc. No. 21 at 1. Mr. Brown responds by citing paragraphs 4, 7(c), 8, 9, 10, 11, and 12 of the

3

VSA, arguing that the Blackstone is explicitly liable to indemnify his loss under the language in those paragraphs. Doc. No. 27 at 7. Upon consideration of these sections, the Court finds that two of the cited sections, specifically Sections 7(c) and 10 preclude dismissal.

Blackstone argues that when the attorney advised Plaintiff to initiate the VSA and remove Cantu from the Fort Sill contract he was acting in a separate capacity as Brown's attorney and not as an agent of Blackstone for whose actions Blackstone could be held liable pursuant to the indemnity agreement found in Section 10 of the VSA. Doc. No. 21 at 7; Doc No. 28 at 6. Section 10 states in relevant part: "[Blackstone] agrees to indemnify, defend, and save harmless . . . [Brown] from any claims or liability arising out of any act or omission of [Blackstone], its *agents*, employees or subcontractors under any provision of this agreement" (emphasis added). Doc. No. 23 ¶ 10. The question the Court must address, then, is whether Mr. Brown has properly alleged the facts required to show the parties' joint attorney acted only on Defendant's behalf when he advised Mr. Brown to ignore the state court judgment.

In Oklahoma, "[a]gency is generally a question of fact to be determined by the trier. If the existence of [agency] is disputed, the question is presented is for the court or jury." *A-Plus Janitorial & Carpet v. Employers' Workers' Comp. Ass'n*, 936 P.2d 916, 930 (Okla. 1997). Oklahoma law has long held, "[e]very attorney is the agent of his client." *Stone v. Sullivan*, 293 P. 232, 234 (Okla. 1930). Additionally, the Supreme Court has found, "[t]he relationship between client and attorney, regardless of the variations in particular compensation agreements or the amount of skill and effort the attorney contributes, is a

4

quintessential principal-agent relationship." *Commissioner v. Banks*, 543 U.S. 426, 436 (2005). Blackstone does not deny that the attorney here was its attorney. Rather it posits that his representation of Mr. Brown was separate from his representation of Blackstone, and therefore Plaintiff cannot receive relief from Blackstone for the independent actions of Brown's counsel.

Blackstone's claims are factual arguments and, at the motion to dismiss phase, the Court must accept as true all well-pled allegations in the amended complaint. *Alvarado*, 493 F.3d at 1215. Here, Plaintiff alleges Blackstone hired an attorney to represent both itself and Mr. Brown. Doc. No. 18 ¶ 9.  To successfully plead that their joint attorney was plausibly acting only on Defendant's behalf, Plaintiff quotes an email in his amended complaint. In the email, Blackstone allegedly instructed the parties' attorney that "[u]nder no circumstances can we allow/force Brown and by extension the state to have to work with Cantu after 9/20/13." Doc. No. 18 ¶ 21. Plaintiff additionally alleges that after this email, the joint attorney told Brown to "disregard the Aycock Order and for [Blackstone] to go forward as Brown's teaming partner. . . ." *Id*. ¶ 9. These alleged facts plausibly show the parties' joint counsel took instructions from Blackstone and delivered the instructions in the form of legal advice to Mr. Brown. The Court is satisfied that these factual allegations are more than conclusory statements that make it plausible the parties' joint attorney was acting only on Blackstone's behalf when he advised Mr. Brown to ignore the Aycock judgment.

Blackstone objects that the email communication on which Plaintiff relies in his complaint is privileged and should be stricken from the amended complaint. Doc. No. 21

5

at 12. In prior litigation between Blackstone and Cantu, this Court found that Mr. Brown and Blackstone were jointly represented. *See Cantu v. Worley et al.*, Case No. CIV-12-129-R at Doc. No. 110 (W.D. Okla. June 7, 2021). 12 O.S. § 2502(D)(6) states that:

> There is no privilege under this section:
> . . .
> 6. As to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to an attorney retained or consulted in common, when offered in an action between or among any of the clients[.]

*See Ochoa v. Union Standard Ins. Grp., LLC*, No. CIV-16-1166-W, 2017 WL 11139695, at *4, n.14 (W.D. Okla. July 7, 2017) ("When two or more persons consult an attorney as the common and joint adviser, communications between them and such attorney are not privileged in actions among themselves, and any one of them may require the attorney to testify as to such communications.") (quotation and citations omitted). The Court therefore finds Plaintiff may refer to alleged email communications between Defendant and the parties' joint attorney in his amended complaint without running afoul of attorney-client privilege. In sum, these allegations, taken as true, demonstrate that the attorney in question was Blackstone's agent who Defendant acted "by and through" and this agent advised Mr. Brown to allow Blackstone to perform food services at Fort Sill.

Having determined Plaintiff has properly alleged his attorney was acting as Blackstone's agent, the Court now examines the VSA to determine whether the agent's actions fall under a provision of the contract. Doc. No. 23 ¶ 10. When interpreting contracts in Oklahoma, courts shall apply the "plain and ordinary sense" to contractual language [*Littlefield v. State Farm Fire & Cas. Co.*, 857 P.2d 65, 69 (Okla. 1993)] and not "force[ ]

6

or constrain[ ] interpretations to create . . . [or] construe ambiguities." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). Additionally, courts "will not undertake to rewrite . . . nor to make . . . either party a better contract than the one . . . executed." *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (citing *Max True Plastering*, 912 P.2d at 869). Likewise, courts "follow the rules applicable generally to contracts, and [ ] must attempt to ascertain the intention of the parties, based upon the whole contract[ ]" when interpreting indemnity provisions. *Wallace v. Sherwood Const. Co.*, 877 P.2d 632, 634 (Okla. Civ. App. 1994) (citing *Luke v. American Surety Co. of New York*, 114 P.2d 950 (Okla. 1941)).

By the express language of the VSA, Blackstone agreed to indemnify Mr. Brown for losses deriving from "any act or omission of [Blackstone or] its agents, … under any provision of [the] agreement." Doc. No. 23 ¶ 10. Mr. Brown argues that the advice he received from Blackstone's alleged agent was an act pursuant to paragraph 7(c) of the contract, which states, "In the performance of the contract . . . [Blackstone] *assume[s] all of the financial risk inherent in contract performance*." Doc. No. 23 ¶ 7(c) (emphasis added). The Court finds Blackstone is plausibly liable under Plaintiff's theory because Defendant's alleged agent supposedly told Plaintiff to disregard a valid court order finding he must use Cantu as his teaming partner. This advice dealt directly with the "performance of the contract," cited in paragraph 7(c), namely the time when Plaintiff was to initiate contract performance. The initiation of performance resulted in a lawsuit and, ultimately, a five-million-dollar judgment against Mr. Brown. Defendant then allegedly breached the contract by refusing to indemnify Plaintiff for this judgment. These well-pled facts provide

7

more than mere conclusory statements and ensure Plaintiff has met his burden at the pleading stage of showing a plausible breach of contract claim based on Defendant's failure to indemnify a financial loss brought on by the actions of Blackstone's alleged agent.

Blackstone additionally argues that Brown's claim for bad faith breach of contract should be dismissed because his allegations do not arise from a special relationship recognized in Oklahoma law. Doc. No. 21 at 9. Mr. Brown contends that the nature of the Randolph Sheppard Act creates a special relationship between the blind licensed manager and his teaming partner. Doc. No. 27 at 8–10.

> Under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing." *Wathor v. Mutual Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004). In cases involving "ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability." *Id*. In the "proper case," however, "punitive . . . damages *may* be sought." *Conover v. Aetna U.S. Health Care, Inc.*, 320 F.3d 1076, 1079 (10th Cir. 2003) (emphasis added). The "proper case" requires that a "special relationship" exist between the parties. *See Wathor*, 87 P.3d at 561–62. Oklahoma courts have found such a "special relationship" in only very limited circumstances, most notably between an insurer and insured. *Id*. at 561; *see also, Allison v. UNUM Life Ins. Co.*, 381 F.3d 1015, 1027 (10th Cir. 2004) ("there is no dispute that the Oklahoma [badfaith] law is directed toward the insurance industry").

*Combs v. Shelter Mutual Ins. Co.*, 551 F.3d 991, 998-99 (10th Cir. 2008). The special relationship . . . is characterized by "disparate bargaining power, often evidenced by an adhesion contract" *Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888, at *8 (W.D. Okla. Sept. 8, 2020) (quotation marks and citations omitted).

Plaintiff acknowledges there is no case law finding that such a special relationship exists in the case of an ordinary commercial contract regarding the Randolph Sheppard Act in federal or Oklahoma law. *Id*. at 10. Mr. Brown also does not allege that he was somehow

8

at a particular disadvantage regarding his bargaining power and this contract is not one of adhesion. Therefore, the Court grants Blackstone's motion as it pertains to Mr. Brown's bad faith breach of contract claim.

Finally, the Court addresses Plaintiff's request to amend his amended complaint contained within his response. A response to a motion to dismiss is not the proper filing to request amendment to an amended complaint. If Mr. Brown desires to amend, he may do so by complying with Local Civil Rule 15.1. The Court will not grant leave based on a request in a response to a motion to dismiss.

In summary, Blackstone's motion to dismiss, Doc. No. 21, is hereby GRANTED as to Plaintiff's bad faith breach of contract claim and DENIED as to Mr. Brown's breach of contract claim.

IT IS SO ORDERED on this 5th day of November 2021.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE